UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY M. KUBIS, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. EDCV 12-00287-JEM <br><br> MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |

**PROCEEDINGS**

On March 8, 2012, Gregory M. Kubis ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits. The Commissioner filed an Answer on June 11, 2012. On December 17, 2012, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be reversed and remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

## BACKGROUND

Plaintiff is a 49 year old male who applied for Social Security Disability Insurance benefits on October 27, 2008, alleging disability beginning June 15, 2007. (AR 25.) The ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 15, 2007, the alleged onset date. (AR 27.)

Plaintiff's claim was denied initially on February 5, 2009, and on reconsideration on April 9, 2009. (AR 25.) Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Michael D. Radensky on April 9, 2010, in San Bernardino, California. (AR 25.) Claimant appeared at the hearing and testified and was represented by counsel. (AR 25.) Vocational expert ("VE") Sandra M. Fioretti also appeared and testified at the hearing. (AR 25.)

The ALJ issued an unfavorable decision on May 28, 2010. (AR 25-34.) The Appeals Council denied review on February 2, 2012. (AR 1-7.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ erred as a matter of law by finding substance abuse a material factor.
2. Whether the ALJ erred as a matter of law by failing to find that Plaintiff refuted a finding of substance abuse.
3. Whether the ALJ erred as a matter of law by failing to find fibromyalgia a severe impairment.
4. Whether the ALJ erred as a matter of law by failing to include symptoms of chronic fatigue and chronic pain in his hypothetical.
5. Whether the ALJ erred as a matter of law by failing to make clear and convincing credibility findings.
6. Whether the ALJ erred as a matter of law by failing to give adequate weight to the treating physician.

2

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**THE SEQUENTIAL EVALUATION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging

3

in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). Residual functional capacity ("RFC") is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R.

§ 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since June 15, 2007, the alleged onset date. (AR 27.)

At step two, the ALJ determined that Plaintiff has the following combination of medically determinable severe impairments: narcotic addiction with chronic fatigue and chronic pain. (AR 27.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 28.)

The ALJ then found that Plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> . . . with his narcotic addition, the claimant is unable to perform any sustained work activity on a regular and continuing basis for a full 8 hours work day for 5 days a week. He is unable to maintain the attention and concentration required in even unskilled work on a regular basis, and would be absent well over 3 days a month with his narcotic addiction.

(AR 28.)

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as an auto and diesel mechanic. (AR 30.) The ALJ also found that considering the Claimant's age, education, work experience, and RFC, based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the Claimant can perform. (AR 31.)

If an individual would not be disabled absent the effects of substance abuse, however, then drug addiction is a contributing factor material to the determination of disability and Plaintiff would be found not disabled. 20 C.F.R. § 404.1535(2). Here, the ALJ found that, if Claimant

stopped his substance abuse, his remaining limitations would not cause more than a minimal impact on Claimant's ability to perform basic work activities and, thus, would not have a severe impairment or combination of impairments. (AR 31-34.) In determining this RFC, the ALJ also made an adverse credibility determination. (AR 32.) The ALJ concluded that, because Claimant would not be disabled if he stopped the substance use, the Claimant's substance use disorder is a contributing factor material to the determination of disability. (AR 34.) Consequently, the ALJ found the Claimant not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision. (AR 34.)

## DISCUSSION

The ALJ decision must be reversed. The ALJ's finding that Plaintiff does not have fibromyalgia or any impairment if he ceased his substance abuse is unsupported by substantial evidence. The ALJ's non-disability determination is not supported by substantial evidence nor free of legal error.

**I.  THE ALJ'S FIBROMYALGIA'S DETERMINATIONS ARE ERRONEOUS**

All of the issues raised by Plaintiff concern his alleged fibromyalgia. Despite repeated findings of fibromyalgia by numerous physicians, the ALJ found that the record does not support "any actual underlying impairment." (AR 29.) Indeed, the ALJ decision barely discusses Plaintiff's impairments, including fibromyalgia, attributing all impairments to narcotic addiction and finding that, if all narcotics use ceased, his impairments would not cause more than minimal impact on Plaintiff''s ability to perform basic work activities. (AR 31.)

**A.   Fibromyalgia**

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons ligaments, and other tissue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). In Benecke, the Ninth Circuit determined that fibromyalgia can be disabling. It described fibromyalgia as follows:

> Benecke suffers from fibromyalgia, previously called fibrositis, a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. *See, e.g., Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech, Inc.*, 125 F.3d 794, 796 (9th Cir. 1997); *Brosnahan v. Barnhart,* 336 F.3d 671, 672 n.1 (8th Cir. 2003). Common symptoms, all of which Benecke experiences, include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. *See Brosnahan*, 336 F.3d at 672 n. 1; *Cline v. Sullivan*, 939 F.2d 560, 563 (8th Cir. 1991). Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis. *See Jordan v. Northrop Grumman Corp.*, 370 F.3d 869, 872 (9th Cir. 2004); *Brosnahan*, 336 F.3d at 672 n. 1.

Id. at 589-90; see also Harman v. Apfel, 211 F.3d 1172, 1179-81 (9th Cir. 2000) (reversing ALJ decision denying benefits for fibromyalgia); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (upholding benefits for fibrositis, now known as fibromyalgia).

Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 877 (9th Cir. 2004) (overruled on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc)), a case in which benefits were denied for fibromyalgia, recognized that the accepted diagnostic test for fibromyalgia is that Plaintiff must have pain in 11 of 18 tender points. See also Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001). Objective tests, such as myelograms, are administered to rule out other diseases and alternative explanations for the pain, but do not establish the presence or absence of fibromyalgia. Jordan, 370 F.3d at 873, 877. It cannot be objectively proven. Id. at 877. The symptoms can be worse

at some times than others. Id. at 873. The Ninth Circuit recognizes fibromyalgia as a physical rather than a mental disease. Id. The most appropriate specialty for evaluating fibromyalgia is rheumatology. Benecke, 379 F.3d at 594 n.4 ("[r]heumatology is the relevant specialty for fibromyalgia").

### B. Relevant Federal Law

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing

8

reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**C.     Analysis**

There is considerable medical evidence that Claimant has the impairment of fibromyalgia, including multiple findings of 11 or more tender points, the standard diagnostic measure for fibromyalgia. Plaintiff's treating rheumatologist Dr. Al Robert Franco presented a disability evaluation dated February 20, 2009, stating that "[t]he physical evaluation disclosed tenderness of 18/18 tender points." (AR 270.) Dr. Franco made similar findings on other examinations of Claimant. Dr. Franco's treating notes disclosed 11/18 tender points on August 13, 2008 (AR 276), 18/18 on September 30, 2008 (AR 276), 14/18 on March 25, 2008 (AR 278), and 18/18 on May 28, 2008. (AR 279.) Pain management physician Dr. Martinez diagnosed fibromyalgia based on more than 11 of 18 tender points on July 8, 2009 (AR 483), more than 14 of 18 tender points on August 10, 2009 (AR 481), and 18 of 18 on October 7, 2009 (AR 477), October 15, 2009 (AR 452), and November 4, 2009. (AR 475). Pain specialist Dr. Suezle also diagnosed fibromyalgia and physicians at Cucamonga Valley Medical Group, Inc., repeatedly diagnosed fibromyalgia and chronic fatigue syndrome, an impairment similar to fibromyalgia. (AR 301, 317, 407, 417, 433, 442, 449, 455, 458, 460.) These physicians were prescribing medications to address the pain caused by Claimant's diagnosed impairment of fibromyalgia.

The ALJ, however, concluded that Plaintiff did not have fibromyalgia at all or any impairment, based largely on the one time evaluation of internal medicine consultant Dr. Sandra Eriks, dated January 7, 2009. (AR 242-45.) She stated, "Claimant, in my opinion, does not have fibromyalgia. I cannot speak specifically for his chronic fatigue. He has zero out of 18

tender points . . . . I suspect he has a non-organic cause for his discomfort in order to obtain continued supplies of narcotics." (AR 245.) The ALJ attributed Claimant's alleged impairment to narcotic addiction and found, "The symptoms in the record do not support any actual underlying impairment." (AR 29.)

The ALJ's finding that Claimant does not have a fibromyalgia impairment is unsupported by substantial evidence. First, the ALJ's rejection of Dr. Franco's opinion is not supported by specific, legitimate reasons. The ALJ cursorily dismisses Exhibit 5F (AR 270-290), which contains the records of Dr. Franco and his partner Dr. Lallande. The ALJ says that 5F "seems to be a response to the internal medicine consultative examination and says he has all the classic symptoms, but presents them in the form of anecdotal narrative (i.e., he has had, etc.) but does not actually document current findings." (AR 29.) The ALJ's statement is plainly contrary to the record. As 5F indicates, Dr. Franco made four multiple tender point findings in 2008 before Dr. Eriks' January 7, 2009, evaluation. All of Dr. Franco's tender point findings, moreover, were current and documented in his evaluation and in his progress notes. The medical evidence of record (5F) also contains extensive lab testing conducted by Dr. Franco (AR 282-290), which is consistent with rheumatologic practice to rule out alternate causes of the alleged pain. The ALJ, moreover, does not discuss or even acknowledge the numerous tender point examinations by Dr. Martinez and the opinions of physicians at Cucamonga Valley Medical Group, who also diagnosed fibromyalgia. These examinations and diagnoses constitute substantial evidence that supports Dr. Franco's opinion.

Second, the ALJ's reliance on Dr. Eriks is misplaced. The ALJ found that Dr. Eriks "noted no typical fibromyalgia findings and suspected narcotics addiction as the underlying problem, and this is consistent with the record." (AR 29.) Dr. Eriks' opinion that Claimant does not have fibromyalgia is obviously in direct conflict with the opinions of Dr. Franco, Dr. Castillo and the other physicians at Cucamonga Valley Medical Group. Dr. Eriks saw Claimant only once, and she is not a rheumatologist, the most appropriate specialty for fibromyalgia. Dr. Franco is. Dr. Eriks notes that she reviewed some accompanying medical records (AR 242), but does not mention or even seem aware of the tender point findings of other physicians.

Indeed, her January 7, 2009, report predates extensive additional medical records documenting multiple tender points and diagnoses of fibromyalgia. Dr, Eriks' one time examination without review of relevant records is of questionable value. Reddick v. Chater, 157 F.3d 715, 727 (9th Cir. 1998) (little weight given to an opinion based on a one time examination without review of medical records). The ALJ, of course, has the responsibility of resolving ambiguities in the medical evidence. Andrews, 53 F.3d at 1039. The ALJ's interpretation of the medical evidence, if reasonable, should not be second-guessed. Rollins, 261 F.3d at 857. Here, however, the ALJ's reliance on Dr. Eriks' opinion that Claimant does not have fibromyalgia is unreasonable. There is simply too much evidence of multiple tender point findings by treating physicians, including a rheumatologist. The ALJ and Dr. Eriks do not even discuss much of that evidence. Dr. Eriks' opinion is not a specific, legitimate basis for rejecting Dr. Franco's opinion or the extensive evidence of fibromyalgia.

Third, the ALJ's reliance on State agency reviewing physician Dr. Rose is misplaced. Dr. Rose stated, "Claimant only seen 1 time by Dr. Franco who gives description of fibromyalgia from an article & does not give any objective findings or give a complete exam." (AR 291.) The Court does not see anything inappropriate about citing an article, certainly nothing that would invalidate Dr. Franco's opinion, and the record plainly contradicts Dr. Rose's assertion that Dr. Franco does not make any objective findings or give a complete exam. Dr. Franco and Dr. Martinez provided the only clinical findings possible or necessary, multiple tender point findings that represent the accepted method of diagnosing fibromyalgia. Dr. Rose also faults Dr. Franco for not responding to a call for additional information, but Dr. Franco's records were supplied and are in the record. (AR 274-290.) There is no basis for Dr. Rose's claim that Dr. Franco's opinion and "advocacy" for his patient is not consistent with mainstream medical care. Dr. Rose's opinion also suffers from its failure to acknowledge or discuss the records and opinions of Dr. Martinez. Dr. Rose's April 3, 2009, disability evaluation also predated significant medical evidence of fibromyalgia. Dr. Rose's opinion does not constitute a specific, legitimate reason for rejecting Dr. Franco's opinion.

Fourth, the linchpin of the ALJ's conclusion that Claimant has no underlying impairment, including fibromyalgia, is the finding that narcotic addiction is the cause of Plaintiff's symptoms, not fibromyalgia, chronic pain or chronic fatigue. (AR 30.) The ALJ relies in part on Dr. Eriks' opinion for this finding. Dr. Eriks, however, only "suspected" that Claimant has "a non-organic cause for his discomfort." (AR 245.) The ALJ says that "[o]ther doctors noted narcotic addiction as well" (AR 29), but no other doctor made that diagnosis. There certainly was evidence of drug-seeking behavior (AR 429), which the ALJ comprehensively documents (AR 29-30), but the drugs were all prescribed medications. Most importantly, the very doctors the ALJ incorrectly cites for narcotic addiction, Dr. Martinez and Dr. Suelze, continued to opine that Plaintiff had fibromyalgia despite any drug abuse. Dr. Franco also twice mentioned that Claimant said only Vicodin helps (AR 274, 278), but nonetheless diagnosed fibromyalgia. These doctors all believed that, notwithstanding any drug abuse, Claimant has fibromyalgia and chronic fatigue syndrome. Only Dr. Eriks "suspected" a non-organic cause of Claimant's pain and only Dr. Eriks and Dr. Rose opined that Claimant had no fibromyalgia or non-severe fibromyalgia. The ALJ's interpretation of the evidence to find that Plaintiff has no underlying impairment at all if he ceased his substance abuse is not reasonable or supported by substantial evidence. Again, there is too much documented multiple tender point evidence, the accepted diagnostic measure of fibromyalgia, a significant portion of which the ALJ does not even address,[1] as well as evidence of chronic fatigue.

The ALJ's RFC is not supported by substantial evidence. The ALJ's non-disability determination is not supported by substantial evidence nor free of legal error.[2]

---

[1] The Court is also concerned that Claimant did not have sufficient notice that the ALJ would make the contention that Claimant's symptoms were caused by narcotic addiction or that there were no underlying impairments. Claimant should have the opportunity to address that issue directly.

[2] There is no need for the Court to address the issue of Plaintiff's credibility at this time, as much will turn on the resolution of the narcotic addiction issue on remand. Additionally, none of the numerous physicians suggested Plaintiff's symptoms were feigned.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding for further proceedings in accordance with this Memorandum Opinion and Order and with law.

DATED: January 15, 2013         /s/ John E. McDermott
                                                                JOHN E. MCDERMOTT
                                                           UNITED STATES MAGISTRATE JUDGE